UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOY DAVIS AND JAMES DAVIS,

    Plaintiffs,

v.

VENTURE ONE CONSTRUCTION, INC.,
ET AL.,

    Defendants.
                                      /

Case No. 06-11950

Honorable Nancy G. Edmunds


**OPINION AND ORDER GRANTING DEFENDANT VENTURE ONE CONSTRUCTION, INC.'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 56 [47]**

    This is a negligence action brought by Plaintiff Joy Davis,[1] an employee of Pilot Travel Centers LLC at its facility in Monroe County, Michigan. Pilot Travel entered into a construction contract with Defendant Venture One Construction, Inc. ("Contractor") to do some remodeling at the facility. During construction under that contract, Plaintiff was injured at her workplace. She was retrieving a broom and dustpan from a work area when a door that was temporarily removed and stored in that area during construction fell on her back. Plaintiff alleges that her injuries were caused by Defendant Contractor's negligence.

    This matter comes before the Court on Defendant Contractor's motion for summary judgment. Defendant's motion is GRANTED because there is no evidence that it owed Plaintiff a duty that was "separate and distinct" from the contractual duties Defendant owed

---

[1]Plaintiff James Davis's loss of consortium claims are purely derivative of his wife's negligence claims. Accordingly, the Court will use the term Plaintiff in the singular when referring to Joy Davis's negligence claims.

Plaintiff's employer, Pilot Travel, under a construction contract. *See Fultz v. Union-Commerce Assocs.*, 683 N.W.2d 587 (Mich. 2004). *See also Banaszak v. Northwest Airlines, Inc.*, 722 N.W.2d 433 (Mich. 2006).

## I. Background

Certain facts are undisputed. At the time of her injury on November 15, 2005, Plaintiff was an employee of Pilot Travel Centers working at its facility in Monroe County, Michigan, and Defendant Contractor was at Plaintiff's workplace performing construction work pursuant to a contract it had entered into with her employer. The construction contract required Defendant Contractor to relocate a Subway sandwich shop inside the Pilot Travel facility and to install a combination check-out counter. (Def.'s Ex. L, Ellis Aff., ¶ 3.) During construction, the Pilot Travel facility was open to customers and Pilot Travel employees continued to perform their normal work responsibilities.

The construction contract between Pilot Travel Centers and Defendant Contractor provides the following with respect to Contractor's obligation to allow access to the Pilot Travel facility while maintaining the construction site, including storage of old equipment, in a safe manner:

> C. Access, Barricades, and Safety
>
> 1. The contractor is responsible for constructing and maintaining temporary construction walls surrounding all construction areas. . . . Adequate safety and customer service signage will be provided and installed by the contractor. Access to restrooms, cooler doors, showers, restaurants, etc. shall be maintained.
>
> 2. The contractor shall barricade an area for placement of . . . material storage, and adequate work area. At a minimum, this barricade shall consist of orange construction fencing. . . .

3. The contractor shall maintain a clean work area at all times during the project. *No materials, tools, power cords, trash, etc., shall be located outside the construction area.* All materials are to be kept in an area not accessible or readily visible to customers. . . . All materials storage and outside work areas are to be cordoned off with orange construction fencing. At the end of each work day, the construction area is to be cleaned, including all materials, tools, trash, etc., and left in a presentable manner overnight or when construction personnel are not present.

D. General

1. Work is to be completed in strict accordance with drawings, specifications and OSHA regulations.

2. The contractor shall provide storage containers for storing existing equipment, new equipment and construction materials. . . . The contractor will remove the existing equipment using extreme care. . . .

(Def.'s Ex. M, 11/2/05 Constr. Contract, Attachment A, 6/17/05 "General 'Combo Checkout' Construction Clarifications," at 2-3.)

The construction contract's General Conditions also specifically address Defendant Contractor's safety obligations in connection with its performance under the contract:

ARTICLE 10  PROTECTION OF PERSONS AND PROPERTY

§ 10.1  SAFETY PRECAUTIONS AND PROGRAMS
§ 10.1.1  <u>The Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the performance of the Contract</u>.

§ 10.2  SAFETY OF PERSONS AND PROPERTY
§ 10.2.1  <u>The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss</u> to:

> .1 employees on the Work[2] and other persons who may be affected thereby;
> .2 the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and
> .3 other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.
>
> § 10.2.2  The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.
>
> § 10.2.3  The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities. . . . .
>
> § 10.2.6  The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents.  This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.
>
> § 10.2.7  The Contractor shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

(*Id.* at Attachment B, "General Conditions of Contract for Construction," Article 10, §§ 10.1-

10.2 (footnote added; emphasis added).)

---

[2] As defined in the construction contract, "[t]he term 'Work' means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations.  The Work may constitute the whole or a part of the Project."  (*Id.* at Attachment B, "General Conditions of the Contract for Construction," Article 1 General Definitions, § 1.1.3.) Thus, "employees on the Work" refers to Defendant Contractor's employees, not Pilot Travels's employees.

The construction contract also required Defendant Contractor to purchase insurance to protect Defendant Contractor from claims, like Plaintiff's, that arise out of its performance of the construction contract:

> ARTICLE 11  INSURANCE AND BONDS
> § 11.1  CONTRACTOR'S LIABILITY INSURANCE
> § 11.1.1  <u>The Contractor shall purchase</u> . . . <u>such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable</u>, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:
>
> .1 <u>claims under workers' compensation, disability benefits and other employee benefit acts which are applicable to the Work to be performed</u>;
> .2 claims for damages because of bodily injury, . . or death <u>of the Contractor's employees</u>;
> .3 claims for damages because of bodily injury, . . . or death <u>of any person other than the Contractor's employees</u>;
> .4 claims for damages insured by usual personal injury liability coverage;
>    . . . .

(*Id.* at Article 11, §§ 11.1, 11.1.1 (emphasis added).)

During the course of construction, an existing door was removed from its hinges and propped up against a wall in a back room that Pilot Travel employees accessed throughout the construction. On November 15, 2005, Plaintiff went into the room to get a broom and dustpan which were located right next to the door. She retrieved the broom and dustpan and turned to exit when, without being touched, the door fell and hit her on the back, injuring her back. (Pl.'s Dep. at 53-55.)

## II. Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

**III. Analysis**

The sole issue presented here is whether Plaintiff can establish that Defendant Contractor owed her a duty of care. Defendant Contractor's motion argues that Plaintiff's negligence claims must be dismissed because Michigan law does not recognize a tort action based solely on the nonperformance of a contractual duty. *See Fultz*, 683 N.W.2d at 591. Plaintiff responds that Defendant Contractor owed her a duty to exercise

reasonable care that (1) is separate and distinct from Defendant's contractual obligations to her employer Pilot Travel; (2) arises because she and other Pilot Travel employees were intended (as opposed to incidental) beneficiaries of the construction contract between Pilot Travel and Defendant Contractor; and (3) arises because the construction contract created a "special relationship" between Plaintiff and Defendant Contractor.

The question whether Defendant Contractor owes a duty to Plaintiff under the facts presented here is one of law for the Court. *Id.* at 590. The Court addresses each of Plaintiff's arguments, beginning with her argument that Defendant Contractor owed her a duty that was separate and distinct from the contractual obligations it owed her employer, Pilot Travel.

### A. Were Duties Owed to Plaintiff Separate and Distinct from Defendant's Contractual Obligations to Pilot Travel

#### 1. Michigan Law

In *Fultz*, the Michigan Supreme Court examined whether the plaintiff, who claimed that the defendant, "by contracting to plow and salt the parking lot, owed a common-law duty to plaintiff to exercise reasonable care in performing its contractual duties." *Fultz*, 683 N.W.2d at 590. The Michigan Supreme Court observed that, in the past, the courts have distinguished between misfeasance (action) and nonfeasance (inaction), and "have held that a tort action will not lie when based solely on the nonperformance of a contractual duty." *Id.* (citing *Hart v. Ludwig*, 79 N.W.2d 895 (Mich. 1956)). It then rejected that approach because it improperly focused on the breach element of a plaintiff's prima facie case of negligence as opposed to the duty element.

> We believe the "slippery distinction" between misfeasance and nonfeasance of a duty undertaken obscures the proper initial inquiry: Whether a particular

7

> defendant owes any duty at all to a particular plaintiff. . . . As there can be no breach of a nonexistent duty, the former misfeasance/nonfeasance inquiry in a negligence case is defective because it improperly focuses on whether a duty was breached instead of whether a duty exists at all.

*Id.* at 592.

The Court then clarified the correct approach for analyzing tort actions, like Plaintiff's here, that are based on a contract and brought by a plaintiff who is not a party to that contract. "[T]he threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on contract will lie." *Id.* The Court further clarified that a duty separate and distinct from contractual duties arises when the defendant creates a new hazard to the plaintiff that did not previously exist. *Id.* at 593.

### 2. Application

Plaintiff concedes that her employer's construction contract with Defendant required it to allow customers and employees access to the Pilot Travel facility during construction and that Defendant Contractor was to comply with all federal safety regulations. Nonetheless, Plaintiff argues, that while performing its contractual duties under the construction contract, Defendant created a new hazard (1) when it allowed, for an extended period of time, the presence of an unsecured door outside the construction zone; and (2) when its site superintendent, Brian Ellis, failed to move the unsecured door to a proper storage location despite being asked to do so. This new hazard, Plaintiff argues, created a duty separate and distinct from Defendant's contractual duties.

Plaintiff is mistaken. This is not a new hazard. The plain language of the construction contract imposed on Defendant broad responsibility for (1) "initiating, maintaining, and

supervising all safety precautions" in connection with its performance of work under the construction contract; (2) taking "reasonable precautions for safety" of and to prevent injury to "persons who may be affected" by its performance of work under the construction contract; and (3) designating one of its employees "at the site whose duty shall be the prevention of accidents." (Construction Contract, Attachment B, "General Conditions of Contract for Construction," Article 10, §§ 10.1.1, 10.1.1, 10.2.6.) Thus, under the terms of the contract, Defendant was obligated to perform the safety precautions that Plaintiff claims would have prevented her accident. Plaintiff has not shown that a duty is owed to her independent of the construction contract. This point is illustrated in *Bertz v. Norfolk Southern Railway*, No. 3:03CV7011, 2005 WL 1566758 (N.D. Ohio July 5, 2005).

In *Bertz*, a landowner had contracted with a security company to guard a railroad crossing on its premises. The plaintiff, a railroad employee, was injured when he attempted to cross that railroad crossing and sued the security company for negligence under Michigan law. The court in *Bertz*, applying *Fultz*, held that the plaintiff's negligence claims against the security company were properly dismissed because the plaintiff had not shown that the security company owed him a duty that was separate and distinct from the contractual duties it owed under its contract with the landowner. *Id.* at *2-3. The court also rejected the plaintiff's claim that the security company had created a new hazard, observing that the security company's failure to adequately guard the crossing "was a failure to provide the contracted for duty" to the landowner, "not the creation of a new hazard." *Id.* at * 3.

Similar to *Bertz*, Defendant's failure to adequately initiate, maintain, and supervise safety measures during construction at the Pilot Travel work site that would have prevented

9

Plaintiff's accident was a failure to provide contractual duties owed to Pilot Travel. Defendant's failures did not create a new hazard that would give rise to an independent duty of care owed to Plaintiff. Rather, Plaintiff was injured by the same sort of construction-site hazard that Pilot Travel contracted with Defendant to prevent. Thus, Plaintiff's reliance on *Osman v. Summer Green Lawn Care, Inc.*, 532 N.W.2d 186 (Mich. Ct. App. 1995), is misplaced.

### B. Plaintiff's Intended Beneficiary and "Special Relationship" Arguments

Plaintiff's second and third arguments that Defendant owed her a duty of care are based on provisions in her employer's construction contract with Defendant Contractor that require Defendant (1) to take reasonable safety precautions and to prevent injury to construction workers "and other persons who may be affected" by the construction work (§ 10.2.1.1); (2) to purchase insurance that will protect Defendant Contractor from (a) claims that may arise out of the construction project, including "claims under workers' compensation, disability benefits and other employee benefit acts which are applicable" to the labor and services provided by the Contractor on the construction project (§ 11.1.1.1), and (b) "claims for damages because of bodily injury . . . of any person other than the Contractor's employees" (§ 11.1.1.3); and (3) to add Pilot Travel as an additional insured on such insurance (Construction Contract, Attachment C, 10/21/05 letter).

#### 1. Intended Versus Incidental Beneficiaries

Although there is no breach of contract claim alleged in Plaintiff's amended complaint, she argues that Pilot Travel employees like her were the intended beneficiaries of Pilot Travel's construction contract with Defendant Contractor thus allowing her to sue for

damages caused by Defendant's breach of safety provisions in that contract. Plaintiff is mistaken.

"Third-party beneficiary law in Michigan is controlled by statute." *Oja v. Kin*, 581 N.W.2d 739, 744 (Mich. Ct. App. 1998). The statute provides in pertinent part that:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.
>
> (2) (a) The rights of a person for whose benefit a promise has been made, as defined in (1), shall be deemed to have become vested, subject always to such express or implied conditions, limitations, or infirmities of the contract to which the rights of the promisee or the promise are subject, without any act or knowledge on his part, the moment the promise becomes legally binding on the promisor, unless there is some stipulation, agreement or understanding in the contract to the contrary.
>
> (b) If such person is not in being or ascertainable at the time the promise becomes legally binding on the promisor then his rights shall become vested the moment he comes into being or becomes ascertainable if the promise has not been discharged by agreement between the promisor and the promisee in the meantime. . . .

Mich. Comp. Laws § 600.1405. Whether a person is an intended beneficiary is determined under an objective standard that reviews the contract language. *Oja*, 581 N.W.2d at 744. "Where the contract in question is primarily for the benefit of the parties thereto, the fact that a third person is incidentally benefitted does not give that third person rights as a third party beneficiary." *Id.* As observed by the Michigan Supreme Court, "section 1405 does not empower just any person who benefits from a contract to enforce it. Rather, it states that a person is a third-party beneficiary of a contract only when the promisor undertakes

11

an obligation 'directly' to or for the person." *Koenig v. City of South Haven*, 597 N.W.2d 99, 104 (Mich. 1999).

The *Koenig* Court further observed that "a third-party beneficiary may be a member of a class, but the class must be sufficiently described." *Id.* at 106. "This follows ineluctably from subsection 1405(1)'s requirement that an obligation be undertaken *directly* for a person to confer third-party beneficiary status." *Id.* (emphasis in original). It then clarified that "this of course means that the class must be something less than the entire universe, e.g., 'the public'; otherwise, subsection 1405(2)(b) would rob subsection 1405(1) of any narrowing effect." *Id.* "[A] contracting party can only be held to have knowingly undertaken an obligation *directly* for the benefit of a class of persons if the class is reasonably identified." *Id.* (emphasis in original.)

An objective assessment of the construction contract at issue here shows that the parties to that contract are its intended beneficiaries. Promises to take reasonable safety precautions to prevent injury to persons other than Defendant Contractor's employees that may be affected by the construction work fail to support Plaintiff's claim that she is an intended rather than incidental beneficiary of her employer's construction contract with Defendant. Likewise, promises by Defendant to obtain liability and worker's compensation insurance to protect it from future claims and to name Pilot Travel as an additional insured similarly establish that Defendant and Pilot Travel are the intended beneficiaries of those contract provisions, not Plaintiff. Because Plaintiff is not an intended beneficiary of the construction contract, she cannot state a cause of action based on any breach of that contract.

   **2. Special Relationship**

For the reasons stated above, Plaintiff's final argument -- that her status as an employee of Pilot Travel and the terms of the Pilot Travel construction contract with Defendant creates a "special relationship" between her and Defendant -- likewise fails. Absent facts that would show Defendant owed Plaintiff a duty that was "separate and distinct" from the contractual duties it owed her employer or that she was an "intended beneficiary" of the construction contact between her employer and Defendant, there is no "special relationship" that gives rise to a duty of care here. The Michigan Supreme Court's decisions in *Fultz*, *Buczkowski v. McKay*, 490 N.W.2d 330 (Mich. 1992), and *Friedman v. Dozorc*, 312 N.W.2d 585 (Mich. 1981), do not support a different result under the facts of this case.

**IV. Conclusion**

For the foregoing reasons, Defendant Venture One Construction's motion for summary judgment is GRANTED. Plaintiff's claims against this Defendant are DISMISSED. Plaintiff's claims against Defendant Blank remain.

       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated: February 28, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 28, 2008, by electronic and/or ordinary mail.

       s/Carol A. Hemeyer
       Case Manager